UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT ex rel. RICHARD BLUMENTHAL,<br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF COMMERCE, CARLOS M. GUTIERREZ, SECRETARY<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>: No. 3:00CV1386 (DJS)<br>:<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM OF DECISION

The State of Connecticut ("Connecticut") brings this action seeking to invalidate as unconstitutional 16 U.S.C. §1854(f)(1)(A), a portion of the Magnuson-Stevens Act 16 U.S.C. § §1851, et. seq. The United States of America and the United States Department of Commerce are named as defendants (collectively "the United States"). The defendants have moved for summary judgment **[doc. #60]**. Connecticut has also moved for summary judgment **[doc. #64]**. There are no disputed issues of fact. The court, for the following reasons, **GRANTS** the motion of the United States and **DENIES** Connecticut's motion.

## BACKGROUND

This lawsuit concerns the regulatory scheme set forth by Congress in the Magnuson-Stevens Act, 16 U.S.C. § §1851, et. seq., for the purpose of regulating the various fisheries of the United States. The Magnuson-Stevens Act ("MSA") creates an exclusive economic zone of federal jurisdiction in ocean waters extending from three nautical miles off shore to two hundred nautical miles off shore. 16 U.S.C. §1802(11) and §1811(a). The MSA involves a complex scheme of intragovernmental cooperation and consultation with the representatives of private


fishing interests. The primary means of creating and implementing policy for the various fisheries[1] covered by the MSA is through eight Regional Fishery Management Councils (the "Council"). 16 U.S.C. §1852(a). Each Council is assigned to manage the fisheries that are found within the exclusive economic zone off the coasts of its member states. A Council must prepare, and submit to the Secretary of Commerce (the "Secretary") for approval, a Fishery Management Plan ("FMP") for the conservation and management of each fishery under its authority. 16 U.S.C. §1852(h). The Council must also prepare and submit for review such amendments to the FMP as are necessary to ensure the effectiveness of the FMP. 16 U.S.C. §1852(h)(1)(B). The Councils must also prepare comments on applications by foreign fishing interests, conduct public hearings on the FMPs, submit reports, conduct periodic reviews and assessments of the fisheries and do anything else required to fulfill their functions. 16 U.S.C. §1852(h)(2)-(6).

The Councils cover all of the coastal waters of the United States and they are composed of a mixture of appointed, ex officio and non-voting members. Each Council has its own statutorily prescribed membership. 16 U.S.C. §1852(a)-(b). Three Councils have authority for all of the fisheries found off the Atlantic coast of the United States. The New England Council ("NEFMC") consists of the states of Maine, New Hampshire, Massachusetts, Rhode Island and Connecticut. 16 U.S.C. §1852(a)(1)(A) The Mid-Atlantic Council ("MAFMC") consists of the states of New York, New Jersey, Delaware, Pennsylvania, Maryland, Virginia and North Caolina. 16 US.C. §1852(a)(1)(B). The South Atlantic Council ("SAFMC") consists of the states of North

---

[1] A fishery is defined as "(A) one or more stocks of fish which can be treated as a unit for purposes of conservation and management and which are identified on the basis of geographical, scientific, technical, recreational, and economic characteristics; and (B) any fishing for such stocks." 16 U.S.C. §1802(13).

Carolina, South Carolina, Georgia and Florida. 16 U.S.C. §1852(a)(1)(C). The NEFMC has eighteen voting members, including twelve appointed by the Secretary, the MAFMC has twenty-one voting members (thirteen appointed by the Secretary) and the SAFMC has thirteen (eight appointed by the Secretary). 16 U.S.C. §1852(a)(1)(A)-(C). The Secretary chooses appointees from lists prepared by the Governors of each state on a Council, and at least one appointed member must come from each state.16 U.S.C. §1852(b).

      The Council transfers the FMP to the Secretary for review prior to publication in the Federal Register. The Secretary must immediately, upon receipt of a plan or amendment, conduct a review to ensure that the plan or amendment is consistent with the national standards for fishery management, other provisions of the MSA and any other applicable law. 16 U.S.C. §1854(a)(1)(A). The Secretary is also required to publish notice of the plan and accept public comment for a period of 60-days from publication of the notice. 16 U.S.C §1854(a)(1)(B). Once the review is complete, the Secretary must approve, disprove or partially approve the plan or amendment by written notice to the Council that submitted the proposal. 16 U.S.C. §1854(a)(3). If the plan is disproved or only partially approved, the Secretary must specify with what applicable law the plan or amendment is inconsistent, the nature of such inconsistencies and recommendations for steps that would resolve the problem. 16 U.S.C. §1854(a)(3). Notice of the Secretary's action must be given within 30 days from the end of the comment period or the plan or amendment takes effect just as if it had been approved. Id. The Secretary may not repeal or revoke an approved plan without the approval of a three-quarters majority of the voting members of the Council with authority over the fishery at issue. 16 U.S.C. §1854(h).

      If a plan is disproved or only partially approved, the Council may submit a revised plan

for review by the Secretary. 16 U.S.C. §1854(a)(4). When a Council fails to prepare an initial plan or amendment or fails to submit a revised plan after disproval or partial approval the Secretary may prepare an FMP without the involvement of the Council with authority over the fishery in question. 16 U.S.C. §1854(c). Absent the failure of a Council to act, the Secretary has no power to generate an FMP unless the MSA specifically creates such authority–no general authority to regulate fisheries exists in the powers of the Secretary under the Act.[2] 16 U.S.C. §1854(c)(1)(A)-(C). Even where the Secretary acts on his own authority under §1854(c)(1), the power to regulate fisheries does not extend to the creation of a limited access system, including fishing quota programs, unless the system is "approved by a majority of the voting members, present and voting, of each appropriate Council." 16 U.S.C. §1854(c)(3). The Secretary must submit any FMP he creates to the Council with authority for that fishery so that the Council may offer comments. 16 U.S.C. §1854(c)(4)(A). It is not clear from the text of the statute whether the Council has a veto power over the Secretary's plan.

The statute essentially rests control over the fisheries of the United in the states and the fishing industry through the eight Councils.[3] The Secretary exercises authority by choosing the members of the Councils, by reviewing the FMPs for legal conflicts and inconsistencies and by stepping in to fill gaps when a Council fails to act. The Secretary also has the power to assign

---

[2]The Secretary does have the power to create FMPs for "highly migratory" species fisheries that are within the geographical authority of more than one Council, but that provision is not at issue in this action. 16 U.S.C. §1852(a)(3).

[3]The Purpose of Magnuson-Stevens is "to establish Regional Fishery Management Councils to exercise sound judgment in the stewardship of fishery resources…which will enable States, the fishing industry, consumer and environmental organizations, and other interested persons to participate in, and advise on, the establishment and administration" of FMPs which "take into account the social and economic needs of the United States." 16 U.S.C. §1801(b)(5).

control over any fishery that extends beyond the geographic area of authority of any single Council. The Secretary may designate one Council to create the FMP for fisheries that come under the authority of more than one Council, or he may require joint creation of an FMP by all Councils with potential authority over the fishery. 16 U.S.C. §1854(f)(1)(A)-(B). "No jointly prepared plan or amendment may be submitted to the Secretary unless it is approved by a majority of the voting members, present and voting, of each Council concerned." 16 U.S.C. §21854(f)(1). The Secretary must determine the geographic boundaries between adjacent Councils. 16 U.S.C. §1854(f)(2).

This case arises out of a long contested dispute between Connecticut and the Secretary of Commerce regarding the allotment of summer flounder available for Connecticut fisherman to catch. The summer flounder is designated as a fishery under the authority of the MAFMC, although the fish is found in the greatest numbers between Cape Cod, Massachusetts and Cape Fear, North Carolina. A brief review of the dispute is necessary.

The members of the Atlantic States Marine Fisheries Commission ("ASMFC")[4] received an instruction from the ASMFC during the early 1980s that a 14-inch minimum size requirement should be adopted for summer flounder in an effort to conserve the dwindling fishery. Connecticut and other northeastern states followed this recommendation but certain mid-atlantic states, including North Carolina, Maryland and Virginia, did not. The restriction caused Connecticut fisherman to catch far fewer summer flounder than their competitors in the mid-

---

[4]The ASMFC is an organization composed of representatives from all of the Atlantic coastal states. The commission was created by an interstate compact approved by Congress in Public Laws 77-539 and 81-721. ASMFC consults with the Regional Councils, but the ASMFC has no official role in the development of FMPs and no authority to craft an FMP or to submit a fisheries plan or regulation to the Secretary for review and approval.

Atlantic states with less restrictive fishery regulations.

The MAFMC crafted an FMP for the summer flounder that took effect in 1988. The original FMP did not contain any fishing quotas. The FMP was amended in 1992 to include an overall quota for taking summer flounder and a system for allocating the quota among all the states with a summer flounder fishery. The allocation system relied on the reported annual catch of summer flounder by each states' fisherman from the years 1980-1989. Connecticut claims that it was unfairly prejudiced by this system because its fisherman were operating under different fishing regulations than the fisherman of North Carolina and Virginia. The MAFMC adopted Amendment 10 in 1997, but this amendment, despite petitions and objections from Connecticut, did not change the quota allocation system.

Connecticut sued the Secretary in 1997, seeking to overturn the adoption of Amendment 10 and also to force the Secretary to pursue Connecticut's proposal for a rulemaking that would create an alternative quota system, replacing the system adopted in the FMP. The United States District Court for the District of Connecticut upheld the Secretary's rulings and also addressed the scope of the Secretary's powers under the MSA. Connecticut v. Daley, 53 F.Supp.2d 147 (D.Conn. 1999). The Daley court found that "the Secretary does not have the power to amend the FMP or establish regulations to install a coast wide quotoa system on his own pursuant to his independent authority under 16 U.S.C. §1854(c)." Daley, 53 F.Supp.2d at 161. The Daley opinion also determined that so long as the FMP's state-by-state quota system was "consistent with the National Standards and other applicable law, the Secretary may not replace it with an alternative he prepares on his own," including through the promulgation of regulations altering the FMP. Id. at 164-165.

Connecticut appealed the Daley ruling to the Second Circuit, arguing for the first time on appeal that the MSA is unconstitutional. Connecticut v. United States Dept. of Commerce, 204 F.3d 413, 416 (2d Cir. 2000). The Dept. of Commerce court held that the statutory interpretation in Daley was dicta and unnecessary to either the District Court ruling or the appellate review. Dep't of Commerce, 203 F.3d at 416. The Second Circuit refused to rule on the constitutional claims raised by Connecticut, including the issue of Connecticut's standing to raise a constitutional challenge to the MSA, on the grounds that the issues were either premature, dependent on unresolved facts or otherwise deserved a full briefing at the trial level prior to consideration on appeal.[5] Id.

The Second Circuit's decision not to review Connecticut's constitutional challenge to the Magnuson-Stevens Act led directly to the pending action, which was filed in July 2000. The original complaint stated a prima facie challenge to both the MSA and the Atlantic Coastal Fisheries Cooperative Management Act 16 U.S.C. § §5101 et seq., but that complaint has since been narrowed through amendment. Presently, Connecticut states only a claim that 16 U.S.C. §1854(f) is unconstitutional as a violation of the Fifth Amendment and the Tenth Amendment.

## Standard of Review

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

---

[5]The Second Circuit did hold that Connecticut had standing in its own right to bring an administrative challenge to the FMP and the Secretary's decision not to promulgate Connecticut's proposed rule. The state's standing was based on its loss of revenue caused by the restrictive quota on summer flounder. Daley, 204 F.3d at 415 n2.

law." Fed. R. Civ. P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

A party may not, however, avoid summary judgment through "mere speculation and conjecture." Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d.Cir. 2001). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## DISCUSSION

Connecticut brings this cause of action alleging that 16 U.S.C. §1854(f)(A) is unconstitutional in violation of both the Fifth and Tenth Amendments to the Constitution. The United States argues that it is entitled to summary judgment on Connecticut's claims, first

because Connecticut lacks standing and second because the claims fail on their merits. Connecticut has cross-motioned for summary judgment on the merits of its claims.

**1. Standing**

The United States argues that Connecticut lacks standing because it cannot show the minimum elements required by the Constitution. "A plaintiff must allege personal injury, fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). Standing "is built on a single basic idea–the idea of separation of powers,"[6] and so the court must be sensitive to the limits on its own authority when it is asked to declare the actions of another branch of the government unconstitutional. Accordingly, the court will follow the direction of the Supreme Court and "carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable." Raines v. Byrd, 521 U.S. 811, 820 (1997).

The United States claims that Connecticut cannot show injury, causation or the potential for redress. The defendants assert that Connecticut has no standing because no change in the regulatory scheme of the MSA will lead to the creation of more favorable regulation and a more meaningful role for Connecticut in the regulatory process.

Defendants' arguments rely heavily on a mischaracterization of Connecticut's position. Plaintiff is not seeking to force the creation of new, more favorable regulation by means of the existing MSA system, but instead desires a new regulatory scheme that will provide Connecticut and its fishermen with the due process they claim to presently be denied. The action of the

---

[6] Allen, 468 U.S. at 752.

Secretary giving rise to this lawsuit is not, as the United States seems to believe, the adoption of Amendment 10 to the summer flounder FMP; rather it is the decision by the Secretary to grant the MAFMC sole authority over the summer flounder fishery that underlies this dispute. Connecticut's Fifth Amendment claim asserts that it is improperly regulated, not by the executive or legislative branch of the federal government but instead by its economic competitors–the interested members of the fishing industry and fishing regulatory bodies of North Carolina, Maryland, etc.

  The United States's contention that a greater voice in the process would not lead to a "meaningful" increase in Connecticut's influence also misunderstands the MSA. If section 1854(f)(1)(A) is found to be unconstitutional as a denial of due process, then the Secretary would be required to assign control of the summer flounder fishery pursuant to section 1854(f)(1)(B). Any FMP that is jointly prepared according to §1854(f)(1)(B) may not be submitted to the Secretary for approval unless it is "approved by a majority of the voting members, present and voting, of *each Council concerned*. 16 U.S.C. §1854(f)(1) (emphasis added). Thus, if Connecticut were to receive the relief it seeks it would have a direct influence over the terms of the FMP for summer flounder by virtue of its participation in the NEFMC. The power to be directly involved in the creation of the subject regulation is absolutely a meaningful increase in Connecticut's influence. The harm (inability to participate in the regulatory process) is caused by the Secretary's decision (authorized by the challenged statute) and would be remedied by a favorable ruling (requiring the Secretary to give the NEFMC and, by extension, Connecticut, authority over the summer flounder fishery). The Constitutional prerequisites for standing are satisfied as to the Fifth Amendment claim.

Connecticut's standing to challenge section 1854(f)(1)(A) is even more certain for the Tenth Amendment claim. Connecticut claims that its sovereignty is violated by virtue of its compelled participation in the Magnuson-Stevens Act regulatory scheme. Essentially, Connecticut asserts that it is required by law to enforce a federal regulation against Connecticut citizens. The injury caused by such compulsion is clear and any ruling that finds the offending statute unconstitutional would free Connecticut from participation in the scheme and correct the injury. The constitutional minimum required for standing is present.

**A. Connecticut's Standing Under the Fifth Amendment**

Although Connecticut has shown the injury, causation and potential for redress that are constitutionally required to bring any claim, the state's standing to bring a cause of action for violation of the Fifth Amendment's Due Process guarantee is not yet established.[7] The Supreme Court has held unequivocally that a state is not a person in the context of the Fifth Amendment and thus may not invoke that amendment in court. State of South Carolina v. Katzenbach, 383 U.S. 301, 323-324 (1966). The rule of Katzenbach remains good law and this court has no authority to overrule the Supreme Court. Connecticut has no standing, in its own right, to bring a cause of action for violation of the Fifth Amendment's Due Process clause.

Connecticut claims a right to bring the Fifth Amendment claim as parens patriae for the people of Connecticut. The Supreme Court has held that "it is no part of [a state's] duty or power to enforce [its citizen's] rights in respect of their relations with the federal government. In that

---

[7]There are no further questions of law that pertain to Connecticut's standing to bring the Tenth Amendment claim. The court can think of no circumstances where a state would lack standing to challenge a law that violates the principal of dual sovereignty underlying our federal system.

field it is the United States, and not the state, which represents them as parens patriae." Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 485-486 (1923). Despite this statement of law, the Supreme Court did not hold, and has not held, that the state may never have parens patriae authority against the United States.[8] Mellon, 262 U.S. at 485 ("We need not go so far as to say that a state may never intervene by suit to protect its citizens against any form of enforcement of unconstitutional acts of Congress"). Typically, however, the state is permitted to represent its citizens parens patriae only when the challenge to federal authority is one seeking federal agency enforcement of, or compliance with, federal laws or regulations. See, Abrams v. Heckler, 582 F.Supp. 1155, 1159-1160 (S.D.N.Y. 1984)(citing cases). The cause of action in this case fits better with the line of cases applying Mellon than with those such as Abrams that permitted state standing as parens patriae in a suit against the United States.

Connecticut argues that Mellon does not create a bright-line rule and asks this court to decline an extension of Mellon to the circumstances of this case. The state's argument is very persuasive. The Second Circuit has already held that Connecticut has a sufficient economic interest in the regulations and FMPs promulgated as a result of the Secretary's actions under §1854(f)(A) to challenge those regulations in its own right. Dep't of Commerce, 204 F.3d at 415 n2. The Second Circuit declined to address the issue of Connecticut's standing as parens patriae. Id. This court finds that the economic interest that provided the basis for standing in Daley is

---

[8]The Supreme Court has stated forcefully that a state does not have authority to bring suit as parens patriae against the United States. Alfred L. Snapp & Sons, Inc. v. Puerto Rico, 458 U.S. 592, 610 n16 (1982). The statement was, however, made in a footnote and was unrelated to the court's ruling, which granted parens patriae authority to Puerto Rico to enforce a federal regulation against private citizens. As a result, the court's affirmation of Mellon has been treated as dicta and has not changed the analysis done when a court is presented with a claim for parens patriae standing.

sufficient to satisfy the requirement that a state have a quasi-sovereign interest apart from any private citizens in order to maintain a parens patriae suit against the United States. See, Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 607 (1982)(holding that a state has a quasi-sovereign interest in the economic well-being of its citizens and in not being denied its rightful status within the federal system). Unlike in some cases where parens patriae standing was denied, there are no other parties present in this case who can vindicate Connecticut's interests; indeed it may be that no party, anywhere, can challenge the Magnuson-Stevens Act on Fifth Amendment grounds.[9] See, Chiles v. Thornburgh, 865 F.2d 1197, 1209 (11th Cir. 1989)(declining to address parens patriae because other parties in the case had standing to raise the claims); Texas v. Mosbacher, 783 F.Supp. 308, 316 (S.D. Tex. 1992)(same).

Although the facts presented make a compelling case for finding that these are the circumstances where a state may represent its citizens as parens patriae against the federal government, there is not a sufficient basis here to break new legal ground and create a novel exception to the rule of Mellon. Connecticut does not seek to enforce any rule or regulation but

---

[9]The Ninth Circuit has held that a private party does not have standing to challenge the constitutionality of the composition of the Regional Councils unless it can prove that a constitutionally proper Council would prevent the specific adverse regulation that created the injury in fact. Northwest Environmental Defense Center v. Brennan, 958 F.2d 930, 937 (9th Cir. 1992). The Brennan court reasoned that because the Council's proposed regulations "were implemented by the Secretary after review" there could be no injury that was caused by the unconstitutional structure of the Council. Id. The broad reading of Brennan has been rejected by one court. Pennsylvania Dept. of Welfare v. United States, 124 F.Supp.2d 917, 923 (W.D.Pa. 2000) ("The question is not whether the adverse governmental decision would have occurred even if the challenged officer were constitutionally appointed…[t]he proper inquiry is whether the plaintiff was subject to the adverse action of an unconstitutionally appointed officer."). This court also rejects the Brennan approach to standing fort claims raised against the MSA, especially to the extent that the Brennan ruling, together with this opinion, could be construed to insulate the MSA from judicial review for constitutional conformity with either the separation of powers doctrine or the delegation doctrine.

instead desires to overturn an existing federal law that governs an area of exclusive federal control. The right claimed here is for due process, but the court cannot find that the due process rights of any individual were actually violated when the state imposes itself as a proxy. The right to due process is an individual right that cannot be adeqautely represented by means of parens patriae authority.

Certainly, the legal theory advanced by the plaintiff is one that can be argued as effectively, perhaps even more effectively, by the state speaking in one voice for its citizens as by numerous private plaintiffs. The claim that the federal government has improperly delegated its regulatory authority to private persons in competition with other citizens subject to regulation is not dependent on an individualized showing of harm and is also a harm that might not create a sufficient economic injury in any one citizen (given the lack of assurance that a constitutionally firm regulatory scheme would result in different regulation) to permit a legal challenge. The state may be, as Connecticut implicitly argues, the entity best suited to vindicate the abstract right to have federal regulatory bodies exercise only those powers that are consistent with the federal system of dual sovereignty and separated powers. Connecticut's theory may be sound, but it offers only theory and that is subordinate to the actual stated claim. Plaintiff has chosen to present a Fifth Amendment claim based on the Supreme Court's decision in Carter v. Carter Coal Co., 298 U.S. 238, 311 (1936) that federal delegation to a private citizen of the power to regulate the business of a competitor is a violation of due process. Although the Carter court couched its ruling in terms of Due Process, that framework is not necessary to application of the legal theory that Congress may not violate the Constitution by delegating its powers too broadly or to the wrong persons. Connecticut has chosen to argue its claims within the Fifth Amendment

framework used in Carter Coal and having done so, it is bound by the law governing such claims. The law dos not permit a state to bring a cause of action to declare a statute unconstitutional as a violation of the Fifth Amendment.[10]

The State of Connecticut is not a person under the Fifth Amendment and therefore may not bring a cause of action pursuant to that provision of the Constitution. Further, Connecticut does not have standing as parens patriae to bring a cause of action to overturn a federal statute on the claims set forth in this action. Connecticut has no standing to pursue its Fifth Amendment claim and the claim is dismissed. Summary judgment is granted to the United States on this issue.

---

[10]If this court were convinced that the claimed unconstitutional delegation of power could only be maintained as an action under the Fifth Amendment, this ruling might be other than it is; however, this court is not convinced that the Fifth Amendment is the only avenue to challenge the composition of the Regional Councils under the MSA. Courts have recognized claims for the unconstitutional delegation of powers and violations of the separation of powers doctrine based on Articles I, II and III of the Constitution as well as the Tenth Amendment. See, Whitman v. American Trucking Associations, 531 U.S. 457, 472 (2001)(claim of unconstitutional delegation of legislative powers in violation of Article I); Printz v. United States, 521 U.S. 898, 922-923 (1997)(holding that the compulsion of state officials to execute federal law violates the Tenth Amendment and separation of powers); Freytag v. C.I.R., 501 U.S. 868 (1991)(challenge to the authority of a special tax court judge to hear cases based on a violation of the Appointments Clause in Article II); United States v. Cortes, 697 F.Supp. 1305 (S.D.N.Y. 1988)(challenge to the Sentencing Guidelines as a violation of the separation of powers under Article III). Indeed, the language of many opinions appears to recognize a general claim for violations of the separation of powers doctrine where the exact nature of the violation may root anywhere in the Constitution. See, Brennan, 958 F.2d at 937 (plaintiff brought claims that the Magnuson-Stevens Act violates the Appointments Clause and the "principle of separation of powers"). Connecticut has not stated a general claim for a violation of the separation of powers, nor has the state set forth a claim for an unlawful delegation of legislative authority. The state has chosen to frame its complaint as a violation of Due Process under the Fifth Amendment, and although other claims can be gleaned from the complaint, the court is bound by Connecticut's statement of its claim.

**II. The Tenth Amendment**

Connecticut alleges that the decision by the Secretary to give authority over the summer flounder to the MAFMC creates a violation of the Tenth Amendment. According to the plaintiff, the MSA makes participation in the creation and enforcement of the regulatory scheme by the states a mandatory event and this compulsion is unconstitutional. The United States contends that section 1854(f)(1)(A) does not compel Connecticut to take any action and further that the MSA does not infringe on state sovereignty.

The Supreme Court has held that the compulsion of state officials by the federal government, either in the form of the state legislature or officers of the state executive, violates the federal systems of dual sovereignty and separation of powers. Printz v. United States, 521 U.S. 898, 918-923 (1997). "[E]ven where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." New York v. United States, 505 U.S. 144, 166 (1992). When a law executing Congress's powers under the Commerce Clause violates state sovereignty it is a usurpation of state power and unconstitutional. Printz, 521 U.S. at 923-924.

Connecticut's argument, as with its claims under the Fifth Amendment, is compelling but ultimately unpersuasive. The state's understanding of the MSA as both compelling state involvement and effectively delegating legislative power to a consortium of state officials and private citizens is based on the statutory reading articulated by the court in Daley as discussed *supra*. This court agrees with the statutory interpretation set forth in Daley, but Connecticut has not challenged the statutory provisions discussed either in Daley or in this opinion. Plaintiff has chosen instead to challenge the constitutionality of one paragraph of one section of the MSA,

section 1854(f)(1)(A). That section is not directed at the states and does not, on its face, compel any action by Connecticut. Section 1854(f)(1)(A) gives the Secretary discretion to "designate which Council shall prepare the fishery management plan for such fishery and any amendment to such plan." 16 U.S.C. §1854(f)(1)(A). There is nothing in this provision that violates the Tenth Amendment.

Connecticut's original complaint challenged the constitutionality of the MSA as a whole, and such an attack might have considerable merit. The language of §1852(a)(1)(A) is a command, not an invitation ("the New England Fishery Management Council *shall*"(emphasis added)). The duties of the Councils are also expressed in clear, command language. 16 U.S.C. §1852(g)-(h). The state's Amended Complaint removes all of these provisions from the claim, however, and leaves this court to consider only the constitutionality of §1854(f)(1)(A). That provision, as noted, is directed to the Secretary, not the states, and is not itself unconstitutional.

The court is bound by the complaint as set forth by the plaintiff; the court may not consider alleged constitutional violations that are not presented by the parties. Certainly, read as a whole the grant of power to the Secretary to choose a Regional Council to govern a fishery leads to some form of compulsion, as the Council must be composed of the states and the Councils must create regulations. This effect is secondary, though, and not a direct result of the terms of §1854(f)(1)(A). Indeed, when the Secretary chooses to give authority to a Council other than the NEFMC, Connecticut is very pointedly not compelled to do anything at all–it is actually prevented from taking action. Connecticut has made the argument that its compelled participation in a scheme that violates its sovereignty by subjecting it to regulations made not by

Congress or the Executive but instead by other states is unconstitutional. This may be correct, but Connecticut's argument does not fit its complaint. The state made a conscious decision not to attack the entire statutory scheme but instead to draw a complex inference from the terms of a very limited provision, and the inference is not supported by the text of that provision. Connecticut is not, by any language of §1854(f)(1)(A), compelled to take any action on behalf of the federal government in violation of its sovereignty. Summary judgment is granted to the United States on this issue.

## CONCLUSION

Although Connecticut has satisfied the minimum constitutional threshhold for standing, prudential common law rules deny it standing, either in its own right or as parens patriae, to pursue its claim that 16 U.S.C. §1854(f)(1)(A) violates the Due Process Clause of the Fifth Amendment. Further, while Connecticut does have standing to bring its claim that §1854(f)(1)(A) violates the Tenth Amendment, the facts show that the statute does not, by its terms, create a constitutional injury. Connecticut's motion for summary judgment **[doc. #64]** is **DENIED**. The United States's motion for summary judgment **[doc. #60]** is **GRANTED**. Judgment shall enter in favor of the Defendant on all counts of the Amended Complaint. The Clerk of the Court is ordered to close the case.

**IT IS SO ORDERED** at Hartford, Connecticut, this <u>18th</u> day of May, 2005.

<u>       /s/DJS       </u>
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**